IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
5:15-CV-464-D

| | | |
|---|---|---|
| ERIC J. WAGNER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM AND** |
| v. | ) | **RECOMMENDATION** |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

In this action, plaintiff Eric J. Wagner ("plaintiff" or, in context, "the claimant")

challenges the final decision of defendant Acting Commissioner of Social Security Carolyn W.

Colvin ("Commissioner") denying his application for a period of disability and disability

insurance benefits ("DIB") and supplemental security income ("SSI") on the grounds that he is

not disabled.[1] The case is before the court on the respective parties' motions for judgment on the

pleadings. (D.E. 28, 32). Each party filed a memorandum in support of its motion (D.E. 29, 33).

The motions were referred to the undersigned Magistrate Judge for a memorandum and

recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (*See* D.E. 34). For the reasons set forth

below, it will be recommended that plaintiff's motion be allowed, the Commissioner's motion be

denied, and this case be remanded for further proceedings.

---

[1] The statutes and regulations applicable to disability determinations for DIB and SSI are in most respects the same.
The provisions relating to DIB are found in 42 U.S.C. subch. II, §§ 401, *et seq.* and 20 C.F.R. pt. 404, and those
relating to SSI in 42 U.S.C. subch. XVI, §§ 1381, *et seq.* and 20 C.F.R. pt. 416.

# BACKGROUND

## I.   CASE HISTORY

Plaintiff filed applications for DIB and SSI on 20 September 2013, alleging a disability onset date of 13 September 2013. Transcript of Proceedings ("Tr.") 106. The application was denied initially[2] and upon reconsideration, and a request for hearing was timely filed. Tr. 106. On 7 May 2015, a hearing was held before an administrative law judge ("ALJ"), at which plaintiff and a vocational expert testified. Tr. 130-168. The ALJ issued a decision denying plaintiff's claim on 14 May 2015. Tr. 106-16.

Plaintiff timely requested review by the Appeals Council and submitted additional evidence for its consideration. Tr. 2, 102. On 10 July 2015, the Appeals Council considered and admitted into the record a medical source statement (Tr. 1276-77) that was among the additional evidence submitted by plaintiff. Tr. 2. Without explanation, the Appeals Council stated that "th[is] additional evidence does not provide a basis for changing the Administrative Law Judge's decision." Tr. 2. The Appeals Council also stated that it "looked at" the other additional evidence submitted by plaintiff (Tr. 8-101), but found that it related to a time after the period in question and did not admit it into the record. Tr. 2. The Appeals Council denied the request for review. Tr. 1. At that time, the decision of the ALJ became the final decision of the Commissioner. 20 C.F.R. §§ 404.981, 416.1481. Plaintiff commenced this proceeding for judicial review on 11 September 2015, pursuant to 42 U.S.C. §§ 405(g) (DIB) and 1383(c)(3) (SSI). (*See In Forma Pauperis* Mot. (D.E. 1); Order Allowing Mot. (D.E. 5); Compl. (D.E. 6)).

---

[2] The record contains two sets of disability determination explanations at the initial level for both the DIB and SSI claims. The explanations appear to be substantively identical. The explanations for the DIB claim were dated by the disability examiner 5 February 2014 (Tr. 169-86) and 6 February 2014 (Tr. 207-24), respectively. The explanations for the SSI claim (Tr. 187-224, 225-43) were both dated by the disability examiner 6 February 2014.

## II. STANDARDS FOR DISABILITY

The Social Security Act ("Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see* 42 U.S.C. § 1382c(a)(3)(A); *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). "An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A); *see* 42 U.S.C. § 1382c(a)(3)(B). The Act defines a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The disability regulations under the Act ("Regulations") provide a five-step analysis that the ALJ must follow when determining whether a claimant is disabled:

> To summarize, the ALJ asks at step one whether the claimant has been working; at step two, whether the claimant's medical impairments meet the regulations' severity and duration requirements; at step three, whether the medical impairments meet or equal an impairment listed in the regulations; at step four, whether the claimant can perform [his] past work given the limitations caused by [his] medical impairments; and at step five, whether the claimant can perform other work.

> The first four steps create a series of hurdles for claimants to meet. If the ALJ finds that the claimant has been working (step one) or that the claimant's medical impairments do not meet the severity and duration requirements of the regulations (step two), the process ends with a finding of "not disabled." At step three, the ALJ either finds that the claimant is disabled because [his] impairments match a

listed impairment or continues the analysis. The ALJ cannot deny benefits at this step.

If the first three steps do not lead to a conclusive determination, the ALJ then assesses the claimant's residual functional capacity ["RFC"], which is "the most" the claimant "can still do despite" physical and mental limitations that affect [his] ability to work. [20 C.F.R.] § 416.945(a)(1).[3] To make this assessment, the ALJ must "consider all of [the claimant's] medically determinable impairments of which [the ALJ is] aware," including those not labeled severe at step two. *Id.* § 416.945(a)(2).[4]

The ALJ then moves on to step four, where the ALJ can find the claimant not disabled because [he] is able to perform [his] past work. Or, if the exertion required for the claimant's past work exceeds [his] [RFC], the ALJ goes on to step five.

At step five, the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that "exists in significant numbers in the national economy," considering the claimant's [RFC], age, education, and work experience. *Id.* §§ 416.920(a)(4)(v); 416.960(c)(2); 416.1429.[5] The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations. If the Commissioner meets her burden, the ALJ finds the claimant not disabled and denies the application for benefits.

*Mascio v. Colvin*, 780 F.3d 632, 634-35 (4th Cir. 2015).

## III.   ALJ'S FINDINGS

Plaintiff was 44 years old on the alleged onset date of disability and 45 years old on the date of the administrative hearing. Tr. 115 ¶ 7. The ALJ found that he has at least a high school education. Tr. 115 ¶ 8. Plaintiff testified that for most of his employment history he worked as a motorcycle salesman. Tr. 136.

Applying the five-step analysis of 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4), the ALJ found at step one that plaintiff had not engaged in substantial gainful activity since his

---

[3] *See also* 20 C.F.R. § 404. 1545(a)(1).

[4] *See also* 20 C.F.R. § 404. 1545(a)(2).

[5] *See also* 20 C.F.R. §§ 404.1520(a)(4)(v); 404.1560(c)(2); 404.929.

alleged onset of disability.  Tr. 108 ¶ 2.  At step two, the ALJ found that plaintiff had the following medically determinable impairments that were severe within the meaning of the Regulations:  diabetes mellitus with neuropathy and retinopathy; hypertension; obesity; detached retina; history of cerebrovascular accident (*i.e.*, stroke); major depressive disorder; generalized anxiety disorder; cognitive disorder; lumbar and cervical degenerative disc disease; and left knee degenerative joint disease.  Tr. 108 ¶ 3.  At step three, the ALJ found that plaintiff's impairments did not meet or medically equal any of the listings.  Tr. 108-09 ¶ 4.

The ALJ next determined that plaintiff had the RFC to perform sedentary work, but subject to the following limitations:

> He can stand and walk two hours in an eight-hour workday. He can sit six hours in an eight-hour workday. He can lift, carry, push, or pull 10 pounds occasionally. He needs to use a cane for ambulation. He needs a job requiring no depth perception. He can occasionally balance, stoop, crouch, kneel, and crawl. He can occasionally climb, but should never climb ladders. He should never work at heights or around dangerous machinery. He has decreased ability to concentrate on and attend to work tasks to the extent that he can only do simple, routine, repetitive tasks (i.e., can apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form and deal with problems involving several concrete variables in or from standardized situations). He is unable to work at a production rate. He is unable to work at jobs requiring complex decision-making, constant change, or dealing with crisis situations.

Tr. 111 ¶ 5; *see* 20 C.F.R. §§ 404.1567(a) (defining sedentary work); 416.967(a) (same).[6]

Based on his determination of plaintiff's RFC, the ALJ found at step four that plaintiff was not capable of performing any past relevant work.  Tr. 114-15 ¶ 6.  At step five, the ALJ accepted the testimony of the vocational expert and found that there were jobs in the national economy existing in significant numbers that plaintiff could perform, including jobs in the

---

[6] *See also Dictionary of Occupational Titles* (U.S. Dep't of Labor 4th ed. rev. 1991) ("DOT"), app. C § IV, def. of "Sedentary Work," 1991 WL 688702.  "Sedentary work" and the other terms for exertional level as used in the Regulations have the same meaning as in the DOT. *See* 20 C.F.R. §§ 404.1567, 416.967.

occupations of egg processor, nut sorter,[7] and cuff folder.  Tr. 115-16 ¶ 10.  The ALJ accordingly

concluded that plaintiff was not disabled from the date of alleged onset of disability, 13

September 2013, through the date of his decision, 14 May 2015.  Tr. 116 ¶ 11.

## IV.    STANDARD OF REVIEW

Under 42 U.S.C. §§ 405(g) and 1383(c)(3), judicial review of the final decision of the

Commissioner is limited to considering whether the Commissioner's decision is supported by

substantial evidence in the record and whether the appropriate legal standards were applied.  *See*

*Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456

(4th Cir. 1990).  Unless the court finds that the Commissioner's decision is not supported by

substantial evidence or that the wrong legal standard was applied, the Commissioner's decision

must be upheld.  *See Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Blalock v.*

*Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).  Substantial evidence is "'such relevant evidence

as a reasonable mind might accept as adequate to support a conclusion.'"  *Perales*, 402 U.S. at

401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  It is more than a scintilla

of evidence, but somewhat less than a preponderance.  *Perales*, 402 U.S. at 401.

Where, as here, the Appeals Council considers additional evidence before denying the

claimant's request for review of the ALJ's decision, "the court must 'review the record as a

whole, including the [additional] evidence, in order to determine whether substantial evidence

supports the [ALJ's] findings.'"  *Felts v. Astrue*, No. 1:11CV00054, 2012 WL 1836280, at *1

---

[7] The DOT defines this occupation in part as follows:  "Observes nut meats on *conveyor belt*, and picks out broken, shriveled, or wormy nuts and foreign matter, such as leaves and rocks."  DOT, No. 521.687-086 (emphasis added).  In addition, an alternative title listed for this occupation is "picking-belt operator."  *Id.*  This definition suggests that this occupation entails production-rate work, although the ALJ found plaintiff unable to perform such work and this limitation was included in the hypothetical to the vocational expert that prompted his testimony that plaintiff could perform this occupation.  *See* Tr. 111 ¶ 5, 162-65.  Neither the vocational expert nor the ALJ provided an explanation addressing specifically the consistency of the nut sorter occupation with the limitation of plaintiff to non-production-rate work.  On remand, the Commissioner would be well advised to provide such a specific explanation in the event the issue arises.

(W.D. Va. 19 May 2012) (quoting *Wilkins v. Sec'y Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991)).   Remand is required if the court concludes that the Commissioner's decision is not supported by substantial evidence based on the record as supplemented by the evidence submitted at the Appeals Council level. *Id.* at *1-2.

The court may not substitute its judgment for that of the Commissioner as long as the decision is supported by substantial evidence. *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam).   In addition, the court may not make findings of fact, revisit inconsistent evidence, or make determinations of credibility. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979).   A Commissioner's decision based on substantial evidence must be affirmed, even if the reviewing court would have reached a different conclusion. *Blalock*, 483 F.2d at 775.

Before a court can determine whether a decision is supported by substantial evidence, it must ascertain whether the Commissioner has considered all relevant evidence and sufficiently explained the weight given to probative evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).   "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

## DISCUSSION

## I.    OVERVIEW OF PLAINTIFF'S CONTENTIONS

Plaintiff contends that the ALJ's decision should be reversed or this case be remanded for a new hearing on the grounds that the ALJ erred by not properly evaluating plaintiff's alleged manipulative limitations in his RFC analysis.    Alternatively, plaintiff seeks remand for consideration of the additional medical source statement he submitted to the Appeals Council.

Because the issue of this additional evidence is dispositive of this appeal, the court's discussion will focus on it.[8]

## II.    ADDITIONAL EVIDENCE ADMITTED BY THE APPEALS COUNCIL

As noted, when the Appeals Council admits additional evidence into the record before denying a claimant's request for review, the court "the court must review the record as a whole, including the [additional] evidence, in order to determine whether substantial evidence supports the [ALJ's] findings." *Wilkins*, 953 F.2d at 96 (internal quotation marks omitted).  At the same time, the court must not resolve conflicts in the evidence.  *See Davis v. Barnhart*, 392 F. Supp. 2d 747, 751 (W.D. Va. 2005) (citing *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996)).  To properly balance its obligations to review the entire record and to refrain from fact finding, the court "should conduct a limited analysis of the additional evidence to assess whether the new evidence is contradictory, presents material competing testimony, or calls into doubt any decision grounded in the prior medical reports." *Felts*, 2012 WL 1836280, at *1 (quoting *McGinnis v. Astrue*, 709 F. Supp. 2d 468, 470 (W.D. Va. 2010) (internal quotation marks omitted)); *see also Davis*, 392 F. Supp. 2d at 751.  In the event the additional evidence meets any of these criteria, the case must be remanded to the Commissioner to weigh and resolve the conflicting evidence. *Felts*, 2012 WL 1836280, at *1.

Here, the additional evidence submitted by plaintiff to the Appeals Council that he contends warrants remand is the medical source statement of plaintiff's treating mental health counsellor, nurse practitioner Connie Hicks, DNP, NP ("NP Hicks"), dated 13 May 2015 (Tr.

---

[8] While declining to resolve as moot plaintiff's argument on his manipulative ability, the court notes that the ALJ did recite evidence in his decision relating to plaintiff's manipulative ability.  *See* Tr. 112 (citing 9 Jan. 2014 report of Satish Kumar, M.D. (Ex. 9F) at Tr. 600).  In addition, although plaintiff correctly acknowledges that manipulative limitations are nonexertional in nature, most of the medical evidence he cites in support of his contention is reports of somewhat diminished strength in his left upper extremity (*e.g.*, 4/5).  *See* Pl.'s Mem. 16; *compare Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles*, app. C §§ 1 (strength) (U.S. Dep't of Labor 1993) *with id.* §§ 9 (handling), 10 (fingering).

1276-77). As indicated, this is the only additional evidence the Appeals Council admitted into the record. The initials "DNP," which follow NP Hicks' name after her signature and printed name in the record, as well as above, indicates that she holds the degree of Doctor of Nursing Practice. This degree is a terminal degree in nursing practice, as opposed to a research-focused doctorate such as a Ph.D. or D.N.Sc. *See generally* Amer. Ass'n of College of Nursing, DNP Fact Sheet, http://www.aacn.nche.edu/media-relations/fact-sheets/dnp (June 2015). NP Hicks treated plaintiff at Vision Behavioral Health Services, LLC almost a year, from 22 January 2014 to at least 8 December 2014, seeing him on five occasions during this period. *See* Tr. 619-20 (22 Jan. 2014), 621-23 (25 Mar. 2014), 1121-22 (2 June 2014), 1123-24 (10 Sept. 2014), 1125-26 (8 Dec. 2014).[9]

The statement includes three tables listing work-related functions and five possible ratings of the degree of limitation of each function. In increasing degree of limitation, the ratings are: "unlimited or very good"; "limited but satisfactory"; "seriously limited"; "unable to meet competitive standards"; and "no useful ability to function." Tr. 1276 (capitalization of these terms omitted throughout this Mem. & Recomm.). The statement set out the following definitions for the last four ratings:

- *Limited but satisfactory* means your patient has noticeable difficulty (e.g., distracted from job activity) no more than 10 percent of the workday or work week.
- *Seriously limited* means your patient has noticeable difficulty (e.g., distracted from job activity) from 11 to 15 percent of the workday or work week.
- *Unable to meet competitive standards* means your patient has noticeable difficulty (e.g., distracted from job activity) from 16 to 25 percent of the workday or work week.

---

[9] As part of his analysis that plaintiff's mental impairments are not disabling, the ALJ, referring to NP Hicks' note on her visit with plaintiff on 25 March 2014, states that "treating providers stated that the claimant's depression was stable (Ex. 12F)." Tr. 113 ¶ 5. In fact, NP Hicks' note lists "stable depression" as a goal. Tr. 621. On remand, the ALJ's interpretation of this medical record needs to be revisited.

- *No useful ability to function*, an extreme limitation, means your patient cannot perform this activity on a regular, reliable and sustained schedule in a regular work setting.

Tr. 1276.

NP Hicks rated plaintiff as "seriously limited" in the following functions: "maintain regular attendance and be punctual within customary, reasonably strict tolerances" (Tr. 1276 § I.E.); "make simple work-related decisions" (as to which NP Hicks also rated plaintiff as "unlimited or very good") (Tr. 1276 § I.H.); "complete a normal workday and workweek without interruptions from psychologically based symptoms" (Tr. 1276 § I.I.); "deal with normal work stress" (Tr. 1276 § I.O.); "deal with stress of semiskilled and skilled work" (as to which NP Hicks also rated plaintiff "limited but satisfactory" with an arrow between the two ratings) (Tr. 1277 § II.D.); "interact appropriately with the general public" (Tr. 1277 § III.A.); "maintain socially appropriate behavior" (Tr. 1277 § III.B.); and "use public transportation" (Tr. 1277 § III.E.). (capitalization of the quoted terminology omitted throughout this Mem. & Recomm.).

When considering NP Hicks' statement as part of the record, the court cannot say that substantial evidence supports the ALJ's decision. One reason is that by rating plaintiff as "seriously limited" in multiple functional areas, NP Hicks appears to find plaintiff materially more limited in these and possibly related areas than the other three sources who opined on plaintiff's mental impairments, who used different terminology suggesting less limitation. The same is true for the ALJ himself.

It is not, of course, the court's role to state definitively that NP Hicks' opinions signify greater limitation because whether, and the extent to which, they do is a factual determination, one of many to be made in evaluating the relative probative value of NP Hicks' opinions. Such fact finding is the responsibility of the Commissioner. Depending on the interpretation given NP

Hicks' opinions, it is reasonably possible that the outcome of the case could be different, particularly in light of the substantial erosion of the occupational base resulting from the restricted RFC the ALJ found plaintiff to have even without consideration of NP Hicks' opinions. *See*, *e.g.*, *Sederbaum v. Colvin*, Civ. Act. No. 1:14–cv–1777–TMC, 2015 WL 3545578, at *17 (D.S.C.) (recommending remand on finding that a different outcome was reasonably possible), *rep. & recomm. adopted by* 2015 WL 3545578, at *1 (8 June 2015); *Owens v. Astrue*, No. 5:11–CV–331–D, 2012 WL 3704955, at *5 (E.D.N.C. 25 June 2012) (same), *rep. & recomm. adopted by* 2012 WL 3704685, at *1 (27 Aug. 2012).

One of the other sources who opined on plaintiff's mental impairments was consulting psychologist Christopher M. Ricci, Ph.D. He performed an evaluation of plaintiff on 5 November 2013 and issued a report on it (Tr. 571-75) the same day. Dr. Ricci opined in part as follows:

> Vocational functional capacities based on psychological functioning, the claimant appears capable of following and understanding some simple directions and instructions, and performing some simple tasks independently. He appears to be having some difficulties with attention and concentration. He may have some difficulties maintaining a regular schedule. He may have difficulties learning new complex tasks without significant training and supervision. He does appear capable of making appropriate decisions, relating adequately with coworkers and supervisors and some difficulties dealing with stress of daily work activities. It is unclear as to how his medical conditions or possible cognitive disorder may impact his ability to perform these tasks.

Tr. 573-74.

Thus, Dr. Ricci's findings that plaintiff "*may* have *some* difficulties maintaining a regular schedule" (Tr. 573 (emphasis added)) contrasts with NP Hicks' finding that he was "seriously limited" in "maintain[ing] regular attendance" (Tr. 1276 § I.E.). In addition, Dr. Ricci's finding that plaintiff "[has] *some* difficulties dealing with stress of daily work activities" (Tr. 573-74 (emphasis added)) contrasts with NP Hicks' finding that he was "seriously limited" in "deal[ing]

with normal work stress" (Tr. 1276 § I.O.).  The ALJ stated that he gave Dr. Ricci's report "significant weight."  Tr. 114 ¶ 5.

The two other sources besides NP Hicks who opined on plaintiff's mental impairments were the psychologists who completed the mental RFC assessments in the disability determination explanations at the initial and reconsideration levels of review.  At the initial level, the psychologist was Nancy Lloyd, Ph.D., whose assessment is dated 15 November 2013.  Tr. 182-84, 200-02, 220-23, 239-41.  At the reconsideration level, the psychologist was Brian Grover, Psy.D., whose assessment is dated 22 April 2014.  Tr. 258-60, 278-80.

Both Dr. Lloyd and Dr. Grover found plaintiff "moderately limited" in the ability to "maintain regular attendance, and be punctual within customary tolerances."  Tr. 183, 201, 221, 239, 259, 279.[10]  In contrast, NP Hicks, as noted, found plaintiff "seriously limited" in this area.  Tr. 1276 § I.E.

With respect to the "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms,"[11] Dr. Lloyd found plaintiff "not significantly limited" (Tr. 183, 201, 221-22, 240), and Dr. Grover found him "moderately limited" (Tr. 259, 279).  NP Hicks found plaintiff "seriously limited" in this area.  Tr. 1276 § I.I.

Both Dr. Lloyd and Dr. Grover found that plaintiff "*may* have *some* difficulty coping with job related stress, but can take direction and adapt to changes."  Tr. 184, 202, 222, 240, 260, 280 (emphasis added).  NP Hicks found plaintiff "seriously limited" in "deal[ing] with normal work stress."  Tr. 1276 § I.O.  Similarly, while both Dr. Lloyd and Dr. Grover found plaintiff

---

[10] In the mental RFC assessments, this function was coupled with the ability "to perform activities within a schedule."  Tr. 183, 201, 221, 239, 259, 279.  This function is not listed in NP Hicks' statement.

[11] In the mental RFC assessments, this function was coupled with the ability "to perform at a consistent pace without an unreasonable number and length of rest periods."  Tr. 183, 201, 221-22, 240, 259, 279.  In NP Hicks' statement, this additional ability is listed separately, and she found plaintiff "limited but satisfactory" in this area.  Tr. 1276 § I.J.

"not significantly limited" in the "ability to maintain socially appropriate behavior" (Tr. 184, 202, 222, 240, 259, 279),[12] NP Hicks found plaintiff "seriously limited" in this area (Tr. 1277 § III.B.).

The ALJ gave "moderate weight" collectively to the psychological assessments of Dr. Lloyd and Dr. Grover and the medical assessments of the state agency consulting physicians. Tr. 114 ¶ 5. The only disagreement he noted related to the medical assessments, finding plaintiff limited to sedentary work rather than light work as the medical consultants found. Tr. 114 ¶ 5; 179, 197, 217, 235, 255-56, 275-76 (consultants' findings that plaintiff could perform light work).

The ALJ, of course, applied the special technique for mental impairments in his decision. The Regulations require an ALJ to use the special technique, as described in 20 C.F.R. §§ 404.1520a(b)-(e), 416.920a(b)-(e), to evaluate any medically determinable mental impairments the ALJ finds the claimant to have. 20 C.F.R. §§ 404.1520a(a), 416.920a(a). Under the special technique, an ALJ rates the degree of a claimant's functional limitation in four broad areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3). The first three functional areas are rated on a five-point scale: none, mild, moderate, marked, and extreme. 20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c)(4). A four-point scale is used to rate the fourth functional area: none, one or two, three, and four or more. 20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c)(4). The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity. 20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c)(4). The functional areas and ratings in the special technique are the same as those

---

[12] In the mental RFC assessments, this function was coupled with the ability "to adhere to basic standards of neatness and cleanliness." Tr. 184, 202, 222, 240, 259, 279. In NP Hicks' statement, this additional ability is listed separately, and she found plaintiff "unlimited or very good" in this area. Tr. 1276 § III.C.

in paragraph B of many of the Listings relating to mental impairments. *See* Listing 12.00.C.; *see also*, *e.g.*, Listings 12.02.B., 12.03.B.

The ALJ found plaintiff to have moderate difficulties in concentration, persistence, or pace. Tr. 110 ¶ 5. He cited in support of this determination Dr. Ricci's findings. Tr. 110 ¶ 5. As discussed, NP Hicks made findings that plaintiff is "seriously limited" in areas relating to concentration, persistence, or pace, such as maintaining attendance and handling stress. *See* Tr. 1276 §§ I.E., O.

NP Hicks' statement is relevant to the alleged period of disability in issue, from 13 September 2013 through 14 May 2015, the date of the ALJ's decision. The statement was issued on 13 May 2015, during this period. Moreover, the impairments to which the statement relates are the same as those underlying the ALJ's decision. Even assuming that NP Hicks' statement is addressed to plaintiff's condition at the time it was issued, her opinions could be deemed to shed light on plaintiff's condition prior to then given the nature of the impairments.

Significantly, NP Hicks is the only source among the four who opined on plaintiff's mental impairments who was a treating source. As noted, she treated plaintiff for almost a year, between January and December 2014, seeing him on five occasions. NP Hicks' status as a treating source gives her opinions potentially greater weight than those of the other sources. Specifically, the opinions of a treating source are generally accorded greater weight than those of nontreating sources because of the special insights into a claimant's impairments that can be gained through the treating relationship. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). "Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot

be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations . . . ." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Not having before him NP Hicks' statement, the ALJ relied on the opinions of one source, Dr. Ricci, who performed such a one-time examination. He also relied, of course, on two nonexamining sources, Dr. Lloyd and Dr. Grover. The opinions of such nonexamining sources are generally entitled to less weight than those of either treating or nontreating examining sources. *See* 20 C.F.R. §§ 404.1527(c)(1), (2); 416.927(c)(1), (2).

In addition, the ALJ noted that "what records that are on file do not reflect disability." Tr. 114 ¶ 5. The opinions expressed by NP Hicks can plausibly be interpreted as signifying that plaintiff is disabled.

The Fourth Circuit has recognized the treating status of a medical source providing additional evidence submitted to the Appeals Council as a factor favoring remand. *Meyer v. Colvin*, 662 F.3d 700, 707 (4th Cir. 2011). In that case, the district court affirmed the decision of the ALJ finding the claimant to be disabled notwithstanding the fact that the only medical opinions from a treating source, a physician, were never before the ALJ but submitted for the first time to the Appeals Council. *See id.* at 703-04. The ALJ mentioned in his decision the lack of restrictions placed on the claimant by a treating physician. *Id.* at 707. While some record evidence credited by the ALJ was corroborative of the treating source's opinions, other evidence of record was not. *Id.* at 707. The Fourth Circuit noted that, "[i]n view of the weight afforded the opinion of a treating physician, *see* 20 C.F.R. § 404.1527(d)(2) [and § 416.927(d)(2)], analysis from the Appeals Council or remand to the ALJ for such analysis would be particularly helpful when the new evidence constitutes the only record evidence as to the opinion of the treating physician." *Id.* at 706.

In ordering remand, the Fourth Circuit further stated:

> The Appeals Council made the new evidence part of the record but summarily denied review of the ALJ decision. Thus, no fact finder has made any findings as to the treating physician's opinion or attempted to reconcile that evidence with the conflicting and supporting evidence in the record. Assessing the probative value of competing evidence is quintessentially the role of the fact finder. We cannot undertake it in the first instance. Therefore, we must remand the case for further fact finding.

*Id.* at 707. Remand is required for comparable reasons here.

The court recognizes, of course, that as a nurse practitioner, NP Hicks is not an "acceptable medical source," as a physician or psychologist is, but an "other source," and that the opinions of such an other source are generally entitled to less weight than those of an acceptable medical source. *See* Soc. Sec. R. 06-03p, 2006 WL 2329939, at *2, 4 (9 Aug. 2006); *see also* 20 C.F.R. §§ 404.1513(d)(1) (identifying nurse practitioners as "other sources"); 416.913(d)(1) (same). Nonetheless, Social Security law recognizes that the opinions of nurse practitioners and the remaining other sources are important and must be considered:

> With the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not "acceptable medical sources," such as nurse practitioners, physician assistants, and licensed clinical social workers, have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists. Opinions from these medical sources, who are not technically deemed "acceptable medical sources" under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.

Soc. Sec. R. 06-03p, 2006 WL 2329939, at *3. Under appropriate circumstances, the opinions of an other source can be afforded greater weight than those of an acceptable medical source. *Id.* at *5.

The fact that NP Hicks holds a DNP degree arguably tends to lend weight to her opinions. *See id.* at *4 (providing for consideration by the ALJ of any factors other than those

specified, which do not include educational degrees, that tend to support or refute the opinions of other sources). Moreover, the length of the treating relationship NP Hicks had with plaintiff and the frequency of visits with him also arguably tend to give weight to her opinions. *See* 20 C.F.R. §§ 404.1527(c)(2)(i), 416.927(c)(2)(i).

Because the inclusion in the record of the medical source statement of NP Hicks precludes the court from determining whether substantial evidence supports the ALJ's decision, this case should be remanded for further fact finding. On remand, the Commissioner needs to consider not only NP Hicks' medical source statement, but also the other additional evidence plaintiff submitted to the Appeals Council (Tr. 8-101) and, of course, the remaining evidence of record.

## **CONCLUSION**

For the foregoing reasons, IT IS RECOMMENDED that plaintiff's motion (D.E. 28) for judgment on the pleadings be ALLOWED, the Commissioner's motion (D.E. 32) for judgment on the pleadings be DENIED, and this case be REMANDED to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Order. In making this ruling, the court expresses no opinion on the weight that should be accorded any piece of evidence or the outcome of this case, matters that are for the Commissioner to resolve.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until 26 July 2016 to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further

evidence; or return the matter to the magistrate judge with instructions. *See*, *e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).**

Any response to objections shall be filed within 14 days after service of the objections on the responding party.

This 12th day of July 2016.

James E. Gates
United States Magistrate Judge